UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KATHLEEN D. S.,

          Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

          Defendant.

CASE NO. 3:22-CV-5388-DWC

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of Defendant's denial of Plaintiff's application for disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 4.

After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred in evaluating Plaintiff's testimony. Had the ALJ properly evaluated Plaintiff's testimony, and if Plaintiff's testimony were credited as true, the ALJ would be required to find her disabled

1   on remand. Accordingly, for the reasons discussed below, the Court finds remanding for an

2   award of benefits is the appropriate remedy.

3                            FACTUAL AND PROCEDURAL HISTORY

4          On December 21, 2017, Plaintiff protectively filed for DIB, alleging disability as of May

5   2, 2017. *See* Dkt. 12; Administrative Record ("AR") 112. The application was denied upon

6   initial administrative review and on reconsideration. AR 123, 133.

7          ALJ Malcolm Ross held a hearing on September 6, 2018 and issued a decision on

8   December 4, 2018 finding Plaintiff not disabled. AR 13-31, 64-110. After the Appeals Council

9   ("AC") denied Plaintiff's request to review ALJ Ross's decision, Plaintiff appealed to this Court.

10  AR 2-7, 1458. On October 2, 2019, this Court found that ALJ Ross had partially erred in

11  evaluating Plaintiff's testimony and the medical evidence, and remanded for further

12  administrative proceedings. *See* AR 1457-79.

13         ALJ Ross held a second hearing on remand on June 17, 2020 and issued a decision on

14  September 2, 2020, again finding Plaintiff not disabled. AR 1316-38, 1392-1424. Plaintiff

15  appealed ALJ Ross's September 2020 decision to this Court, and this Court remanded for further

16  administrative proceedings based on the stipulation of both parties. AR 2138-41.

17         ALJ Allen Erickson held a third hearing on remand on February 10, 2022, where Plaintiff

18  amended her alleged onset date to December 26, 2017 (AR 2085-86), and issued a decision on

19  March 14, 2022, finding Plaintiff not disabled. AR 2048-2113. In pertinent part, the ALJ found

20  at step two that Plaintiff's severe impairments included post-traumatic stress disorder ("PTSD")

21  and bilateral lower extremity chronic regional pain syndrome ("CRPS") related to bilateral

22  plantar fasciitis. AR 2054. The ALJ also found Plaintiff has the residual functional capacity

23  ("RFC") to perform sedentary work. AR 2056. Because Plaintiff did not file exceptions to ALJ

24

1  Erickson's decision, the AC did not assume jurisdiction of Plaintiff's case, making ALJ

2  Erickson's March 2022 decision the final decision of the Commissioner. *See* Dkt. 12, p. 3; 20

3  C.F.R. § 404.984(d).

4          In Plaintiff's Opening Brief, Plaintiff contends the ALJ erred: (1) at steps two and five of

5  the sequential evaluation process, (2) in evaluating her symptom testimony, (3) and evaluating

6  medical opinion evidence.  Dkt. 12, p. 1.

7                              STANDARD OF REVIEW

8          Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

9  social security benefits if the ALJ's findings are based on legal error or not supported by

10 substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

11 Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

12                                  DISCUSSION

13 **I.     Whether the ALJ Erred At Step Two**

14         Plaintiff contends the ALJ erred at step two by failing to find her migraine headache

15 disorder as "severe." See Dkt. 12, p. 14.

16         At step two of the sequential evaluation process, the ALJ must determine if the claimant

17 suffers from any medically determinable impairments that are "severe." 20 C.F.R. §

18 404.1520(a)(4)(ii). An impairment is not considered to be "severe" if it does not "significantly

19 limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. §

20 416.920(c); Social Security Ruling ("SSR") 96-3p. Basic work activities are those "abilities and

21 aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b); SSR 85-28. An impairment is not

22 severe if the evidence establishes only a slight abnormality that has "no more than a minimal

23

24

1    effect on an individual[']s ability to work." SSR 85-28; *Smolen v. Chater*, 80 F.3d 1273, 1290

2    (9th Cir. 1996).

3          In this case, the ALJ found that Plaintiff's migraine headaches do not "create any

4    significant limitation in her ability to perform basic work activities." AR 2054. During the

5    hearing, Plaintiff testified that Plaintiff experiences "unmanageable" migraines" that prevent her

6    from getting out of bed once or twice a month. AR 2089-90. Plaintiff's record shows she

7    reported about her worsening migraines, but they do not indicate that they were so severe as to

8    "significantly limit" her abilities to do basic work activities. 20 C.F.R. § 416.920(c); SSR 96-3p;

9    AR 2510-12, 2519-21. Without further showing how her migraines could have more than

10   minimally affected her ability to work, Plaintiff has not met her burden in showing the ALJ erred

11   at step two. Accordingly, the Court rejects Plaintiff's argument.

12         **II.      Whether the ALJ Erred at Step Five**

13         Plaintiff contends the ALJ erred at step five by improperly finding that she is able to

14   perform work that is available in "significant numbers in the national economy." Dkt. 12, pp. 3-

15   4.

16         At step five of the sequential evaluation process, the ALJ has the burden of determining

17   whether "the claimant can perform a significant number of other jobs in the national economy."

18   *See Ford*, 950 F.3d at 1148. The ALJ can meet this burden by relying on the testimony of a

19   vocational expert (VE). *See Lounsburry v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006). Here,

20   the ALJ, while relying on the VE's testimony, found Plaintiff able to perform three occupations:

21   document preparer (which exists in 15,000 jobs nationally), surveillance system monitor (which

22   exists in 9,000 jobs nationally), and addressor (which exists in 4,500 jobs nationally). AR 2064.

23

24

Plaintiff first argues the ALJ's reliance on the VE's testimony was erroneous because the VE inaccurately stated the job availabilities for the occupations of surveillance system monitor and addressor. Dkt. 12, p. 3. In support of her contention, Plaintiff included in her Opening Brief figures from Job Browser Employment Estimate showing there are only 2,790 surveillance system monitor jobs and 2,065 addressor jobs available nationally. *See* Dkt. 12, p. 3; 12-1, pp. 1-2.

When a claimant "fails entirely to challenge a vocational expert's job numbers during administrative proceedings before the agency, the claimant forfeits such a challenge on appeal." *See Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017). Here, during the hearing, Plaintiff questioned the VE about the source of data used to calculate the job numbers testified to, but did not challenge the VE's testimony regarding the job data. AR 2111-12. Thus, Plaintiff's argument is waived. But even if Plaintiff's argument is not waived, as the Commissioner points out, neither Plaintiff nor Plaintiff's counsel has shown that they have the expertise to calculate job figures available in the national economy. *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1194 (9th Cir. 2022) (finding that job figures offered by plaintiff's counsel is not probative evidence because counsel "had no identified expertise"). Moreover, in the absence of any contrary evidence, a VE's testimony is regarded as inherently reliable. *Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017); *see also Bayliss*, 427 F.3d at 1217-18 ("[a] VE's recognized expertise provides the necessary foundation for his or her testimony. Thus no additional foundation is required.") As neither Plaintiff nor Plaintiff's counsel have shown that they have the expertise and experience in calculating job numbers, the Court rejects Plaintiff's arguments.

Alternatively, Plaintiff contends that even if the numbers the VE did provide were accurate, they do not amount to a "significant range of work." *See* Dkt. 12, pp. 4-5. Specifically,

Plaintiff argues that for the ALJ to make a proper finding of nondisability, each occupation the ALJ determines Plaintiff is able to perform must individually exist in at least 25,000 jobs nationally, as held in *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014) and as provided in the regulations. *See* Dkt. 12, pp. 4-5; 14, p. 2 (citing 20 C.F.R. § 404.1566(b)).

The Court disagrees with Plaintiff's reading of *Gutierrez* and the regulations. In *Gutierrez*, the Ninth Circuit did not contemplate whether each job the ALJ found the claimant could do was individually significant. Instead, when the Ninth Circuit held that 25,000 jobs constituted as a "close call" in meeting the definition of "significant number", the 25,000 figure represented *all* the jobs the claimant could perform, not each individual job. *Gutierrez*, 740 F.3d 519, 529 (9th Cir. 2014). Here, the occupations the ALJ found Plaintiff could perform total 28,500 jobs nationally. AR 2065. As this figure is more than what the Ninth Circuit held to be a "a close call," the Court rejects Plaintiff's argument.

### III.   Whether the ALJ Erred in Evaluating Plaintiff's Symptom Testimony

Plaintiff contends the ALJ erred in evaluating her symptom testimony. Dkt. 12, p. 5-11.

Plaintiff testified she stopped working because of foot pain and lower extremity issues, namely her CRPS. AR 2084, 2087. Plaintiff testified that although various treatments have managed the pain in her lower extremities, none has significantly helped. *See* AR 2087. Plaintiff testified that due to her foot pain, she is not able to walk for more than a half mile and she is unable to stand for more than 10 minutes without experiencing a lot of pain. *See* AR 2088. Plaintiff stated she is often barefoot because it hurts to put anything on her feet, and she has to stay off her feet for six hours and elevate them. AR 2098-99, 2101, 2014-05. Plaintiff also testified to having migraines four to six times a month, being fatigued, and needing to nap for three to four hours per day. AR 2089-90, 2099-2100.

1    As for her mental health, Plaintiff testified to having PTSD since 2010, for which she has

2    been attending weekly counseling. AR 2091-94. She testified that she believes her mental

3    impairments, specifically her irritability and inability to get along well with others, prevents her

4    from becoming a reliable employee. AR 2093-94.

5    As for her activities of daily living, Plaintiff testified to crocheting, reading books, and

6    playing instruments. AR 2099. Plaintiff also attends school, but she stated that she typically

7    misses two three days of classes because of her foot pain. AR 2105-06. Plaintiff also stated her

8    driving is limited to 30 minutes to attend her appointments, she is able to make quick meals on

9    occasion, and she runs errands with her husband on the weekends for an hour, or asks her

10   husband to do them. AR 2096-97, 2102.

11   If an ALJ rejects the testimony of a claimant once an underlying impairment has been

12   established, the ALJ must support the rejection "by offering specific, clear and convincing

13   reasons for doing so." *Smolen*, 80 F.3d at 1284 (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th

14   Cir. 1993)); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citing *Bunnell v.*

15   *Sullivan*, 947 F.2d 343, 346-47 (9th Cir. 1991)). As with all of the findings by the ALJ, the

16   specific, clear and convincing reasons also must be supported by substantial evidence in the

17   record as a whole. 42 U.S.C. § 405(g); *see also Bayliss*, 427 F.3d at 1214 n.1 (citing *Tidwell*, 161

18   F.3d at 601).

19   In this case, the ALJ found that while Plaintiff's physical and mental health impairments

20   "could be reasonably be expected to cause" her alleged symptoms, her statements as to the

21   "intensity, persistence and limiting effects of these symptoms are not entirely consistent" with

22   (1) the objective medical evidence, (2) Plaintiff's activities of daily living, and (3) her

23   conservative treatment. AR 2058-60.

24

1    With regards to the ALJ's first reason, an ALJ may reject a claimant's symptom

2    testimony when it is contradicted by the medical evidence. *See Carmickle v. Comm'r, Soc. Sec.*

3    *Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th

4    Cir.1995)). Here, in discounting Plaintiff's testimony about her physical symptoms, the ALJ

5    identified Plaintiff's physical evaluations throughout the relevant period showing she presented

6    with intact strength, intact sensation, normal range of motion, and gross motor function. AR

7    2058 (citing AR 1236, 1256-57, 1812-14, 2526). The ALJ also found that Plaintiff's physical

8    examinations revealed "grossly normal physical findings." AR 2059. The cited evidence shows

9    her lower extremity motor strength was "5/5" (except her ankle plantarflexion strength was

10   "4/5,"), her tandem gait was mostly normal, and a review of her systems showed no muscle pain,

11   joint pain, joint stiffness, limp, limited movement, or spams. AR 1803-04, 1812-14, 1818, 1825,

12   2704, 2708-10, 2753.

13   However, if a claimant's CRPS has been found to be a medically determinable severe

14   impairment—as is the case here—and if "the [claimant's] statements about the intensity,

15   persistence, or functionally limiting effects of pain or other symptoms are not substantiated by

16   objective medical evidence, the adjudicator must make a finding on the credibility of the

17   individual's statements based on a consideration of the entire case record." *See* SSR 03-02p.

18   Here, several of Plaintiff's treatments notes, including those cited by the ALJ, show Plaintiff

19   rated the intensity of her foot pain "6" or "8" out of 10. *See* AR 1810, 1813, 1815, 1817, 1820,

20   1825, 2711. While the ALJ noted that Plaintiff's tandem gait was normal, Plaintiff's record also

21   shows she had difficulty walking in tandem gait and was limited only to 20 feet. AR 2541, 2730.

22   Though Plaintiff's physical examinations revealed mostly normal results, Plaintiff's treating

23   sources often noted her walking was limited to due to increased pain, her ability to walk on her

24

toes was limited to two strides, and numbness throughout her feet caused frequent imbalance and

falling. AR 1814-16, 2540. They further noted her foot pain "remains debilitating" to her ability

to perform activities of daily living and attend school, and that she was "limited" in mobility and

standing." AR 1242, 1817. To properly evaluate Plaintiff's symptom testimony, the ALJ was

required to consider Plaintiff's overall record, including these comments. But the ALJ here

seemed to have bypassed Plaintiff's continuous reports of pain and the several notations from

Plaintiff's treating sources regarding Plaintiff's mobility issues due to her CRPS. The ALJ

instead focused primarily on the objective medical evidence. As this is contrary to the directives

of SSR 03-02p, in discounting Plaintiff's testimony about her physical symptoms, the ALJ erred.

The ALJ, however, did not err in discounting Plaintiff's testimony regarding her mental

health because of her "routine unremarkable" mental exams. AR 2060. The cited evidence shows

she often presented alert and oriented, and her memory, concentration, thought process,

cognition, judgment, and attention were intact and unimpaired. AR 1180, 1189, 1193, 1245-46,

1661. Plaintiff was often observed as cooperative and the record shows no depression or anxiety,

or that her anxiety was in remission. AR 1247, 1795, 1801-04. As these findings undermine

Plaintiff's statements regarding her mental health impairments and how they affect her ability to

work, the Court finds the ALJ reasonably discounted this portion of her testimony.

With regards to the ALJ's second reason, an ALJ may reject a plaintiff's symptom

testimony based on her daily activities if they contradict her testimony or "meet the threshold for

transferable work skills." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair v. Bowen*,

885 F.2d 597, 603 (9th Cir. 1989)). Here, the ALJ points to Plaintiff's ability to attend school, go

on trips and vacations, and roller skate. AR 2058-59. But the record shows Plaintiff missed

several of her classes due to pain and received disability accommodations including attendance

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 9

1   leniency during one of her terms. AR 92-93, 326, 1406, 1694, 1706. That Plaintiff was also able

2   to take care of her children, leave the house, and travel outside the state does now show she has

3   transferable work skills, especially since she testified that she cannot always prepare for dinner

4   for her children, she is limited to driving for only 30 minutes, and her husband often helps her

5   with her errands. AR 1674-75, 2096-97. Furthermore, in cases involving CRPS, "[c]areful

6   consideration must be given to the effects of pain and its treatment on an individual's capacity to

7   do sustained work-related physical and mental activities in a work setting on a regular and

8   continuing basis." SSR 03-02p. The activities the ALJ identified here do not amount to work-

9   related activities in a work setting, therefore in discounting Plaintiff's testimony based on its

10  inconsistency with her activities of daily living, the ALJ erred.

11          With regards to the ALJ's third reason, evidence that medical treatment helped a claimant

12  "'return to a level of function close to the level of function they had before they developed

13  symptoms or signs of their mental disorders' . . . can undermine a claim of disability."

14  *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (quoting 20 C.F.R. pt. 404, subpt. P,

15  app. 1 (2014)). Here, the ALJ cited to Plaintiff reports of improvement from her spinal cord

16  stimulator ("SCS"). AR 1110, 1242. But Plaintiff's other treatment notes also show she has

17  reported its lack of effectiveness on multiple occasions. AR 2526-27, 2538, 2703-04. Further,

18  while the record may show Plaintiff responded positively to her SCS, the ALJ does not show

19  how her improvement means she is able to enter the workforce. *See Garrison v. Colvin*, 759 F.3d

20  995, 1017 (9th Cir. 2014). Accordingly, the Court finds the ALJ erred in rejecting Plaintiff's

21  testimony for this reason.

22          "[H]armless error principles apply in the Social Security context." *Molina v. Astrue*, 674

23  F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if it is not prejudicial to the claimant or

24

"inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Commissioner, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-1119 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

The Court does not find the ALJ's error in evaluating Plaintiff's symptom testimony harmless. As further explained below, *infra* Section V, had the ALJ properly evaluated Plaintiff's testimony, and if Plaintiff's testimony is credited as true, the ALJ would have to find Plaintiff disabled on remand.

## IV.    Whether the ALJ Erred in Evaluating Medical Opinion

Plaintiff contends the ALJ erred in evaluating the medical opinion of Dr. Kristin Erickson. Dkt. 12, pp. 12-13.

In June 2020, Dr. Erickson completed a disability questionnaire and found that Plaintiff's "[c]hronic pain in her feet, toes, and arches interfere with walking, standing." AR 2047. She also found that "[p]ain impacts her ability to attend school, perform activities of daily living, intercourse with spouse, sleep and travel" and "engage in social activities." *See id*.

The ALJ discounted Dr. Erickson's opinion because it (1) was "not supported by a direct examination," (2) "appear[ed] to rely heavily on [Plaintiff's] descriptions of her functional abilities," (3) did "not provide clear, vocationally-relevant statements of [Plaintiff's abilities]," and (4) and was inconsistent with Plaintiff's medical record. AR 2062-63.

Plaintiff filed her application on December 27, 2017. AR 112, 125. Under the rules applicable to this case, the ALJ must "articulate how [he] considered the medical opinions" and

1    "how persuasive [he] find[s] all of the medical opinions" by considering their supportability,

2    consistency, the medical source's relationship with the claimant, the frequency of the claimant's

3    visit with the medical source, the claimant's examining relationship with the medical source, as

4    well as other factors. *See* 20 C.F.R. § 404.1520(c). Supportability and consistency are the two

5    most important factors the ALJ must consider. 20 C.F.R. § 404.1520c(a). The supportability

6    factor requires the ALJ to consider the relevance of the objective medical evidence and the

7    supporting explanations presented by the medical source to justify their opinion. 20 C.F.R. §

8    404.1520c(c)(1). The consistency factor involves consideration of how consistent a medical

9    opinion is with the other record evidence. 20 C.F.R. § 404.1520c(c)(2).

10         With regards to the ALJ's first reason, whether a medical source has examined a claimant

11   instead of only reviewing the claimant's medical is a factor which an ALJ can consider when

12   evaluating medical opinions. *See* 20 C.F.R. § 404.1520c(c)(3)(v). Here, to complete the

13   questionnaire, Dr. Erickson reviewed Plaintiff's medical records. *See* AR 2039. But the record

14   seems to indicate that Dr. Erickson at least administered a physical exam on both of Plaintiff's

15   feet, thus the Court cannot say the ALJ's finding is supported by the record. *See* AR 2044 ("Is

16   there pain on physical exam?"). In any case, even if Dr. Erickson did not examine Plaintiff, such

17   reason is not in itself enough to discount Dr. Erickson's medical opinion, as the regulations make

18   it clear that a medical opinion's supportability and consistency are the most important factors to

19   consider in weighing a medical opinion. *See* 20 C.F.R. § 404.1520c(a). Thus, in discounting Dr.

20   Erickson's opinion based on lack of a direct examination, the ALJ erred.

21         With regards to the ALJ's second reason, while discounting a medical opinion when it

22   relies too heavily on a claimant's self-reports is a valid reason, "when an [medical] opinion is not

23   more heavily based on a patient's self-reports than on clinical observations, there is no

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 12

1   evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir.

2   2014) (internal citations omitted). Here, the questionnaire included Plaintiff's reports of pain and

3   flare-ups, but it also included Dr. Erickson's diagnosis, observations about the effect of

4   Plaintiff's orthotics on her feet, and information about Plaintiff's other foot conditions (which

5   Dr. Erickson diagnosed in another questionnaire after examining Plaintiff). *See* AR 2031, 2039,

6   2041, 2043-46. The ALJ's finding that Dr. Erickson's medical opinion relied heavily on

7   Plaintiff's self-reports is not supported by substantial evidence, thus in rejecting Dr. Erickson's

8   opinion for this reason, the ALJ erred.

9          With regards to the ALJ's third reason, under the new regulations, a medical opinion's

10  supportability is measured by the relevance of the objective medical evidence and supporting

11  explanations presented by the medical source. *See* 20 C.F.R. § 404.1520c(c)(1). Here, the ALJ

12  pointed out that Dr. Erickson's opinion was "overly vague" and not supported by "clear,

13  vocationally-relevant statements of [Plaintiff's] abilities." *See* AR 2062. Plaintiff argues Dr.

14  Erickson did provide vocationally relevant statements when she wrote that Plaintiff's foot pain

15  occurs monthly and require "immobilization for approximately 3 days." Dkt. 12, p. 13; AR 2040.

16  However, this part of Dr. Erickson's questionnaire consisted of Plaintiff's subjective reports. The

17  record shows that statement was in response to the following question: "Does the veteran *report*

18  that flare-ups impact the function of the foot? If yes, document the veteran's description of the

19  impact of flare-ups *in his or her own words*." *See id.* (emphases added).

20         But Plaintiff's incorrect citation aside, the Court finds the questionnaire did provide

21  functional limitations. For example, Dr. Erickson's finding that Plaintiff could not ambulate for

22  more than five to 10 minutes without stopping to rest is a limitation that could "assist in

23  establishing that [Plaintiff] is disabled for Social Security purposes." *See Turner v.*

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 13

1  *Commissioner of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (upholding ALJ's rejection of a

2  physician's opinion because if failed to set forth any specific limitations on the claimant). This

3  statement was specifically found in a section titled "Functional Loss and Limitation of Motion,"

4  where Dr. Erickson was instructed to use information from Plaintiff's history and physical exam

5  to assess whether there is "pain, weakness, fatiguability or in coordination that significantly

6  limits [Plaintiff's] functional ability." *See* AR 2045. Thus, in discounting Dr. Erickson's opinion

7  for its lack of functional limitations, the ALJ erred.

8        With regards to the ALJ's fourth reason, the more consistent a medical opinion is with

9  evidence from other medical sources and nonmedical sources, the more persuasive it is. *See* 20

10 C.F.R. § 404.1520c(c)(2). Here, the ALJ discounted Dr. Erickson's suggestion that Plaintiff is

11 required to use a cane because her record shows she is able to walk with a normal gait and have

12 been observed to walk up to 20 feet without a use of a device. AR 2062. But as stated above,

13 Plaintiff's record also shows her walking was limited to due to increased pain, her ability to walk

14 on her toes were limited to two strides, and numbness throughout her feet caused frequent

15 falling. AR 1814-16, 2540. Plaintiff's treating sources also noted that her foot pain remain[ed]

16 debilitating" to her ability to perform activities of daily living and attend school, and that she was

17 "limited" in mobility and standing." AR 1242, 1817. The ALJ's finding is not supported by

18 substantial evidence, thus in rejecting Dr. Erickson's suggestion for its inconsistency with the

19 record, the ALJ erred.

20       By failing to provide at least one valid reason to discount Dr. Erickson's medical opinion,

21 the ALJ erred. As previously stated, an error is harmless only if it is not prejudicial to the

22 claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *See Stout*,

23 454 F.3d at 1055, *see Molina*, 674 F.3d at 1115. In this case, although the ALJ erred in

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 14

1  discounting Dr. Erickson's medical opinion, the Court cannot say that this was consequential to

2  the ALJ's "ultimate nondisability determination" considering the ALJ found Plaintiff had the

3  RFC to perform sedentary wok.  *See Stout*, 454 F.3d at 1055; AR 2056. An RFC finding need not

4  directly correspond to a specific medical opinion but may incorporate the opinions by assessing

5  RFC limitations entirely consistent with, even if not identical to, limitations assessed by the

6  physician. *See Turner*, 613 F.3d at 1223 (the ALJ properly incorporates medical findings by

7  assessing limitation that are "entirely consistent" with a physician's limitations); *see also Rounds*

8  *v. Comm'r of Social Sec. Admin*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible

9  for "translating and incorporating clinical findings into a succinct RFC."). Here, in limiting

10  Plaintiff to sedentary work, the ALJ incorporated Dr. Erickson's assessment that Plaintiff is

11  limited in walking, standing, and ambulating.

12  　　　　In her Reply Brief, Plaintiff argues she is able to demonstrate harmful error because Dr.

13  Erickson found that Plaintiff's pain immobilizes her for three days every month, precluding her

14  from competitive employment as testified by the VE. *See* Dkt. 14, pp. 6-7; AR 2040, 2110. But

15  again, Dr. Erickson did not make this finding—these statements were self-reports, not functional

16  limitations. *See* AR 2040. Therefore, Plaintiff has failed to show harmful error with the ALJ's

17  evaluation of Dr. Erickson's opinion.

18  　　　　**V.**　　**Remedy**

19  　　　　Plaintiff requests that this Court remand for an award of benefits. Dkt. 12, pp. 14-19.

20  Plaintiff argues that if either Dr. Erickson's medical opinion or her subjective testimony is

21  credited as true, the ALJ would be required to find her disabled. *Id.*

22  　　　　The Ninth Circuit has developed a three-step analysis for determining when to remand

23  for a direct award of benefits. Such remand is generally proper only where

24

1  (1) the record has been fully developed and further administrative proceedings
2  would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient
   reasons for rejecting evidence, whether claimant testimony or medical opinion;
3  and (3) if the improperly discredited evidence were credited as true, the ALJ
   would be required to find the claimant disabled on remand.

4  *Trevizo*, 871 F.3d at 682-83 (quoting *Garrison*, 759 F.3d at 1020).

5       The Ninth Circuit emphasized in *Leon v. Berryhill* that even when each element is

6  satisfied, the district court still has discretion to remand for further proceedings or for award of

7  benefits. 80 F.3d 1041, 1045 (9th Cir. 2017).

8       With regards to the first element, the Court recognizes that this case has already

9  remanded twice. AR 1458-79, 2138-46. Simply providing another opportunity to assess

10 improperly evaluated evidence, allowing the ALJ to have a "mulligan", does not qualify as a

11 remand for a "useful purpose" under the first part of the credit as true analysis. *See Garrison*,

12 759 F.3d at 1021-22 (citing *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing

13 the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play

14 again' system of disability benefits adjudication."). With regards to the second element, for the

15 reasons cited above, the ALJ has failed to provide clear and convincing reasons for discounting

16 Plaintiff's testimony concerning her foot pain. Finally, with regards to the third element, Plaintiff

17 testified she cannot wear socks or shoes and has to elevate her feet for most of the day. AR 1408.

18 During the hearing, the VE had testified that an individual who cannot wear shoes and requires

19 taking time throughout the workday to elevate his or her feet would be prevented from

20 competitive employment. AR 2109. Thus, if Plaintiff's testimony credited as true, the ALJ would

21 have to find her disabled on remand. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007)

22 ("[W]e will not remand for further proceedings where, taking the claimant's testimony as true,

23

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 16

1  the ALJ would clearly be required to award benefits."), Accordingly, remand for an award of

2  benefits is the appropriate remedy.

3                                    <u>CONCLUSION</u>

4          Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded

5  that Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is reversed

6  and this matter is remanded for an award of benefits.

7          Dated this 21st day of December, 2022.

8

9                                    _____
                                      David W. Christel
10                                    United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 17